# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| RICHARD MCDANIEL,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL INSTRUMENTS CORPORATION, MICHAEL MCGRATH, ALEXANDER DAVERN, ERIC STARKLOFF, DUY-LOAN LE, GERHARD FETTWEIS, JAMES CASHMAN, III, LIAM GRIFFIN, and GAYLA DELLY,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Richard McDaniel ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against National Instruments Corporation ("National Instruments" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Emerson Electric Co. ("Emerson").[1]

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

2.      On May 25, 2023, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Emerson and Emerson's wholly owned subsidiary, Emersub CXIV, Inc. ("Merger Sub").  The Merger Agreement provides that Company stockholders will receive $60.00 per share of National Instruments common stock in connection with the Proposed Transaction.

3.      The Company's corporate directors subsequently authorized the May 25, 2023, filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for June 29, 2023.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**THE PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, the owner of National Instruments common stock.

10. Defendant National Instruments is a Delaware corporation with its principal executive offices located at 11500 North Mopac Expressway, Austin, Texas 78759. The Company's shares trade on the Nasdaq Global Select Market under the ticker symbol "NATI." National Instruments provides a wide variety of software tools for programming automated test and automated measurement applications. The Company serves semiconductor and electronics, transportation, aerospace, and defense industries, as well as government agencies.

11. Defendant Michael McGrath is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Alexander Davern is and has been a director of the Company at all times relevant hereto.

13. Defendant Eric Starkloff is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

14. Defendant Duy-Loan Le is and has been a director of the Company at all times relevant hereto.

15. Defendant Gerhard Fettweis is and has been a director of the Company at all times relevant hereto.

16. Defendant James Cashman, III is and has been a director of the Company at all times relevant hereto.

17. Defendant Liam Griffin is and has been a director of the Company at all times relevant hereto.

18. Defendant Gayla Delly is and has been a director of the Company at all times relevant hereto.

19. Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On April 12, 2023, the Company and Emerson jointly announced in relevant part:

> ST. LOUIS and AUSTIN, Texas, April 12, 2023 /PRNewswire/ -- Emerson (NYSE: EMR) and NI (Nasdaq: NATI) today announced that they have entered into a definitive agreement under which Emerson will acquire NI for $60 per share in cash at an equity value of $8.2 billion. Emerson already owns approximately 2.3 million shares of NI, representing approximately 2% of

shares outstanding, which were acquired at a weighted average price of $36.84. As a result, Emerson's effective per share purchase price is $59.61.

NI provides software-connected automated test and measurement systems that enable enterprises to bring products to market faster and at a lower cost. NI's solutions help customers solve current and future test challenges and improve speed and efficiency in their product development cycles. NI had $1.66 billion in 2022 revenue and operates in more than 40 countries, serving approximately 35,000 customers across semiconductor and electronics, transportation, and aerospace and defense markets.

"We are pleased to reach an agreement with NI, whose best-in-class test and measurement product and software offerings accelerate Emerson's progress toward a cohesive, higher growth and higher margin automation portfolio," said Lal Karsanbhai, President and Chief Executive Officer of Emerson. "With this expansion into test and measurement, Emerson will enhance its automation capabilities and gain a broader set of customers that relies on NI's solutions at critical points along the product development cycle. These capabilities provide Emerson industry diversification into attractive and growing discrete markets like semiconductor and electronics, transportation and electric vehicles, and aerospace and defense that are poised to benefit from secular growth trends. NI's business is well-aligned with our vision for automation and we look forward to working together to bring more comprehensive and innovative solutions to our customers, accelerate growth and position Emerson to deliver significant shareholder value."

"Over the past several months, we've been evaluating strategic options for the future of our business with the intent to maximize its value," said Eric Starkloff, NI's Chief Executive Officer. "We ran a robust and comprehensive process, considered a range of potential options, and believe this represents the best outcome for all NI stakeholders. This transaction is a strong testament to the improvements and initiatives we've implemented in recent years that have transformed NI into a software focused company with higher growth, better profitability and lower cyclicality. We're thrilled that Emerson recognizes the value we've created and we believe they will help us build on our momentum to further position NI as a leading provider of software-connected automated test and measurement systems."

**Compelling Strategic and Financial Rationale**

- **Balanced and Diversified End Markets:** With favorable long-term trends and an estimated priority total addressable market of $35 billion, the test and measurement market is fast-growing, highly complementary and one of the four priority adjacencies Emerson presented at its 2022 Investor Conference. The transaction is expected to drive value creation

and advance Emerson's position as a global automation leader by expanding and diversifying its customer base within highly attractive end markets. With a diversified end market mix including semiconductor and electronics, transportation, and aerospace and defense, NI is expected to be well positioned to capitalize on megatrends that offer attractive growth opportunities. In markets like semiconductor and electric vehicle manufacturing, NI expands Emerson's reach into the design and validation phase of the lifecycle, providing early access to customers. Overall, NI will increase Emerson's end market exposure in discrete markets to 18% of sales, which will be Emerson's second largest industry segment.

- **Complementary Software and Innovation Capabilities:** NI's technology stack of industry-leading intelligent devices, controls and software complements Emerson's own technology stack and will accelerate Emerson's efforts to create a higher value, cohesive industrial technology portfolio. NI's flexible and modular system-level test solutions have an open and interoperable software platform, a key differentiator that enables customers to continually evolve and automate their test processes in increasingly complex and fast-changing end markets. With 20% of sales in software, NI also increases Emerson's exposure to high-growth industrial software opportunities. Both Emerson and NI share innovation-focused engineering cultures. With Emerson's proven track record of innovation and successful new product launches, the combined company will be able to accelerate and expand the development of innovative offerings for customers leveraging the complementary expertise of both organizations.

- **Delivers Substantial Synergies:** Emerson has identified $165 million of cost synergy opportunities by the end of year 5 through application of best practices from the Emerson Management System. Emerson intends to drive productivity improvements and streamline duplicative costs across general and administrative, sales and marketing, and research and development functions, while leveraging Emerson's scale in manufacturing and supply chain. Additional opportunities to enhance NI's free cash flow generation will be pursued through proven operational excellence and productivity levers.

- **Strong Financial Profile and Attractive Returns for Shareholders:** The transaction is expected to be immediately accretive to adjusted EPS and Emerson's long-term financial targets outlined at Emerson's 2022 Investor Conference. NI's strong positions in attractive and growing markets are expected to deliver sustainable underlying growth aligned to Emerson's 4-7% through-the-cycle underlying growth target. NI also brings significant recurring revenue and immediate gross

   margin accretion to the combined Emerson portfolio. The combination of strong growth, attractive gross margins and the synergy potential to expand operating margins all contribute to returns in line with Emerson's communicated returns criteria.

- **Unites Aligned Company Cultures**: NI's innovation and problem-solving focused culture is highly complementary with Emerson's purpose-driven culture focused on innovation. Employees will have expanded opportunities for career development and advancement within Emerson.

**Transaction Terms & Approvals**

The transaction has been approved by the Boards of Directors of both Emerson and NI. Under the terms of the agreement, NI shareholders will receive $60 per share in cash, which represents a 49% premium to NI's closing share price as of January 12, 2023, the day prior to NI's public announcement of a strategic review.

The transaction is expected to close in the first half of Emerson's fiscal 2024, subject to the completion of customary closing conditions, including regulatory approvals and approval by NI shareholders. Emerson expects to finance the transaction using available cash and liquidity, including approximately $8 billion of post-tax proceeds from the majority sale of Climate Technologies to Blackstone announced in October 2022, which is expected to close in the second calendar quarter of 2023.

* * *

**Advisors**

Goldman Sachs & Co. LLC and Centerview Partners LLC are serving as financial advisors to Emerson and Davis Polk & Wardwell LLP is serving as legal advisor. BofA Securities is serving as exclusive financial advisor to NI and Wachtell, Lipton, Rosen & Katz is serving as legal advisor.

**The Materially Incomplete and Misleading Proxy Statement**

21. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on May 25, 2023  The Proxy Statement, which recommends that National Instruments stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially

misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses that support the fairness opinions provided by the Company's financial advisor BofA Securities, Inc. ("BofA"); and (c) potential conflicts of interest faced by BofA and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for the Company*

22.     The Proxy Statement fails to disclose the line items underlying National Instruments' forecasted: (a) Adjusted EBITDA; (b) Adjusted Diluted Earnings Per Share; and (c) Unlevered Free Cash Flow with respect to each of the Company's "June 2022 Projections," the "December 2022 Projections," and the "February 2023 Projections."

*Material Misrepresentations and/or Omissions Concerning BofA's Financial Analyses*

23.     The Proxy Statement fails to disclose material information concerning BofA's financial analyses

24.     With respect to the *Discounted Cash Flow Analysis* performed by BofA Securities, the Proxy Statement fails to disclose: (a) the Company's terminal values; and (b) the Company's estimated calendar year 2028 normalized unlevered free cash flow used in the analysis.

25.     With respect to the *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis* performed by BofA, the Proxy Statement fails to disclose the respective individual multiples and financial metrics for each of the companies and transactions analyzed by the financial advisor

26.     With respect to the stock price targets analysis performed by BofA Securities, the Proxy Statement fails to disclose the individual price targets observed and their sources.

27. With respect to the premia paid analysis performed by BofA Securities, the Proxy Statement fails to disclose the identities of the transactions analyzed and the individual premiums observed.

*Material Misrepresentations and/or Omissions Concerning BofA's and Company Insiders' Potential Conflicts of Interest*

28. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by BofA, including how much of the financial advisor's fee is contingent upon consummation of the Proposed Transaction.[3]

29. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any of Emerson's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

30. The Proxy Statement similarly fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Emerson and Company management, including who participated in all such communications, when they occurred and their content.

31. The omission of the above-referenced information renders statements in the "Certain Financial Projections," "Opinion of BofA Securities, Inc.," and "Interests of NI's Executive Officers and Directors in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[3] *See* Proxy Statement at 46.

32. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and National Instruments**

33. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. National Instruments is liable as the issuer of these statements.

35. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

36. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

37. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

38. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

39. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

40. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of National Instruments within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of National Instruments and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

45. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company stockholders;

      B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 6, 2023      **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*